# CHARLESTON.

LAWRENCE *et al.* v. MONTGOMERY GAS COMPANY *et al.*

Submitted May 13, 1919.    Decided May 27, 1919.

1. EQUITY—*Answer—Office of Exception.*

Strictly speaking the office of an exception to an answer in equity is to specifically point out some particular allegation of the bill which is not responded to, or to which a better or more specific answer is required, or to rid the answer, when desired, of some scandalous or impertinent matter.    (p. 386).

2. SAME—*Sufficiency of Answer—Objection or Exception.*

But in this state and in Virginia, by a loose practice indulged, the sufficiency of an answer as a whole or in part may be challenged by an objection or exception thereto; and perhaps, on specific objection to immaterial matter in the answer, such matter may be eliminated, and the issues thereby limited to the material facts put in issue by the bill and answer.    (p. 386).

3. SAME—*Demurrer to Answer—Setting Cause for Hearing—Waiver —Reversal.*

The practice in some of our federal courts to treat a demurrer to an answer, or general exceptions thereto which are equivalent to a demurrer, as a motion to set the cause down for hearing on bill and answer, and a waiver of the right to contest the facts alleged, has not been followed in the courts of this state. And where such general exceptions are interposed to an answer and one or more of the allegations thereof may be good or sufficient to put in issue some material fact alleged in the bill, the decree below overruling such exceptions as a whole will not be reversed on appeal.    (p. 387).

4. CORPORATIONS—*Specific Performance—Special Receiver—Presumption and Burden of Proof—Authority of Officers.*

To justify the appointment of a special receiver of the property

84 W. Va.

in a suit for specific performance of a contract of sale and purchase thereof, plaintiff must show a clear right to the property itself; but where the contract is that of a corporation, and it and a deed pursuant thereto have been executed and delivered by its president and secretary in due form, and the plaintiff has thereby presented a clear prima facie right and cast the burden of showing want of authority of the officers of the corporation, relied on as a defense, authority on the part of said officers will be presumed, and the burden will be cast upon the corporation to show want of such authority.  (p. 388).

5.  SPECIFIC PERFORMANCE—*Appointment of Special Receiver.*

Where in such a case the corporation defendant has not discharged such burden, and the trial court in the exercise of its discretion has appointed a special receiver of the property sued for, the appellate court in advance of a contrary showing is not called upon to reverse the decree below appointing a special receiver.  (p. 388).

Certified Questions from Circuit Court, Kanawha County.

Suit for specific performance by A. C. Lawrence and others against the Montgomery Gas Company and others.  From an order entered on plaintiff's motion appointing a receiver to take charge of and operate an oil well situated on the lot in controversy and to make proper accounting defendants appeal, and, pending the appeal, the plaintiffs' exceptions to the answers of the Montgomery Gas Company were overruled, and certain questions or propositions of law were certified.

*Affirmed*

*Blue & McCabe, C. J. Van Fleet, Maynard F. Stiles,* and *Linn & Byrne,* for plaintiffs.

*L. B. O'Neal, Williams, Scott & Lovett, Koontz & Hurlbutt, J. G. Bunting, Davis, Davis & Hall* and *McClintic, Mathews & Campbell,* for defendants.

MILLER, PRESIDENT.

This is a suit for specific performance of a contract for the sale and purchase of a lot of land valuable for oil and gas. The case as now presented has two, but not wholly independent branches.  In the first, the circuit court by order entered in the cause on October 9, 1918, on motion of plaintiffs, and upon the

bill and amended and supplemental bill and the answers of some of the defendants thereto, and upon certain ex parte affidavits filed, appointed a special receiver to take charge of and operate the well known as the Burke Oil Well, situated on the lot in controversy, and to keep distinct and accurate accounts of all the oil produced therefrom and to sell and market the same as there required, and to make proper accounting therefor. From this order or decree an appeal was awarded by this court on October 31, 1918, upon the petition of the defendants Montgomery Gas Company and Columbia Carbon Company, the latter company claiming the property as a subsequent purchaser thereof.

Subsequently, by order entered on January 17, 1919, while the cause was pending here on appeal, the court below permitted the plaintiffs to withdraw their general replication to the answer of the Montgomery Gas Company to the original and amended bills, and to file some six several exceptions in writing thereto, but upon consideration thereof, the court by the same order overruled them; and thereupon on its own motion certified some nine questions or propositions of law, which the court conceived were thereby presented, with its rulings thereon, to this court, pursuant to section 1 of chapter 135 of the Code. And this is the second branch of the case presented for our consideration.

On the hearing here a motion was interposed on behalf of the Montgomery Gas Company to dismiss the certified case on the ground that the exceptions certified do not challenge the sufficiency of any summons or return of service, nor of any pleading, and therefore not properly certified under the statute, which limits our jurisdiction to that class of questions.

The material questions or issues tendered by the bills were whether the contract of sale and purchase of July 25, 1918, sued on, for the money and other consideration therein recited, alleged to have been made and executed by and on behalf of the Montgomery Gas Company by O. J. Henderson, President, and D. C. Smallridge, Secretary-Treasurer, and signed and sealed also by said Smallridge, S. S. Wallace, H. Lane and J. H. Burgess as directors, and constituting a majority of the board

of directors of said company, and signed also by plaintiffs in their own proper persons; and the deed made pursuant to said contract on July 26, 1918, tendered July 27, duly executed by and on behalf of said corporation by said O. J. Henderson, attested by the secretary and acknowledged in due form as prescribed by the statue, and by agreement delivered into the hands of the Kanawha Valley Bank to be held in escrow, and to be delivered by it to plaintiffs, the purchasers, on payment of the cash payment of $10,000.00 and their note for a like amount as called for by the deed, were in fact the contract and deed of said corporation and were so executed and delivered by and with the authority of said corporation duly conferred or binding upon it by a course of dealing and holding out by said company of said officers and directors as clothed with such authority and estopping it to deny such authority. And also whether, as alleged, plaintiffs had so far complied with the terms of said contract and the agreement placing said deed in escrow, by depositing with said depositary the cash payment and their note called for and described in the deed, on July 30, 1918, while said deed still remained in the hands of the depositary, as entitled them to specific performance of the contract by the defendant the Montgomery Gas Company.

The circumstances and facts surrounding the parties at the time of the making of said contract and deed alleged in the bills are not controverted by the answers of the Montgomery Gas Company, but the authority of Henderson, president, and of his codirectors to make said contract and to make, execute and deliver said deed in escrow or otherwise without the ratification of the stockholdrs owning at least sixty percent of the capital stock of the corporation, is denied; but there is no denial that the officers and directors undertook on behalf of said corporation to enter into said contract and to make and deliver the deed substantially as agreed. The denial is want of authority given by law, statute, or holding out as alleged, so as to estop the corporation or stockholders. And it is alleged that at an informal meeting of stockholders held on July 31, 1918, at which the same officers and directors with a few other stockholders were present, in all representing 95,612 shares of the

150,000 shares of capital stock of the company, they refused to ratify the said contract of July 25, 1918, and then and there received and considered the offer of the Columbia Carbon Company to purchase said property at the price of $35,000.00, and agreed to sell and convey said property to said company subject to the ratification and confirmation of the stockholders and directors at a meeting to be called and held for that purpose.

The several exceptions interposed to these answers, certified here by the court below, do not point out any particular allegation or paragraph of the bills not responded to by the answers. They amount to nothing more than general challenges of the sufficiency of the several paragraphs thereof, to put in issue the question of the corporate authority of the officers and directors to execute said contract and deed. As defendants' counsel insist, they amount to nothing more than a demurrer to the answer, challenging their sufficiency in a law, not the proper, subject of exceptions, wherefore not properly certified to this court under section 1 of chapter 135 of the Code.

Strictly speaking there is no such thing as a demurrer to an answer in equity; and exceptions are only proper where it is conceived the answer is not responsive to some allegation of the bill, and a better or more specific answer is desired and called for, or where it is desired to rid the answer of some scandalous or impertinent matter. *Richardson* v. *Donehoo,* 16 W. Va. 685; *Sandusky* v. *Faris,* 49 W. Va. 150; 1 Barton's Chancery Practice, §125; 1 Hogg's Equity Procedure, §416; 1 Enc. Plead. & Prac. 895.

But while this is the general rule respecting exceptions, a rather loose practice seems to have grown up in this state and in Virginia, of allowing the sufficiency of an answer to be presented by some general or specific exception thereto, having the effect of a demurrer. *Blair* v. *Core,* 20 W. Va. 265; *Bennett* v. *Pierce,* 45 W. Va. 654; *Ward* v. *Ward's Heirs,* 50 W. Va. 517; *Kelly* v. *Hamblen,* 98 Va. 383. In the latter case, where the point was not raised below, the Virginia court, by Judge Keith, referring to this practice, says that he neither approves nor condemns it, but reserves it for further consideration. The third point of the syllabus, however, is: "An

exception to the sufficiency of an answer is tantamount to an averment that the answer, if true, constitutes no defense to the complaintant's demand." In *Blair* v. *Core, supra,* it was held that an exception to an answer for insufficiency is in the nature of a demurrer and admits the truth of the matters excepted to, and it is error for the court to sustain an exception to matter alleged in the answer which, if true, would be proper ground of defense to the bill in whole or in part.

In the Federal courts, agreeable to the English Chancery practice, the only way of testing the sufficiency of an answer on its merits as a defense to the case made by the bill, is to have the case set down for hearing on bill and answer *Louisville & Nashville R. R. Co.* v. *Wright,* 190 Fed. Rep. 252, and cases cited. In *Walker* v. *Jack,* 88 Fed. Rep. 576, 577, one of the cases referred to, Judge Taft says: "The court seems to have treated the exception as if equivalent to a demurrer testing the sufficiency of the averments of the answer as a defense to the bill on its merits. This was not according to proper equity practice. There is no such thing as a demurrer to an answer in equity. *Grether* v. *Cornell's Exec'rs,* 23 C. C. A. 498, 75 Fed. 742. The only way by which the sufficiency of an answer on its merits as a defense to the case made in the bill can be tested is by setting the case for hearing on bill and answer. The office of an exception is to raise the question whether the averments and denials of the answer are sufficiently responsive to the allegations of the bill." In *Grether* v. *Wright,* 23 C. C. A. 498, 75 Fed. 742, Judge Taft says: "The only way by which the sufficiency of an answer to the bill in equity can be tested is by setting the case down for hearing upon bill and answer, the effect of which is an admission by the complainant of all the averments of fact properly pleaded in the answer and a waiver of any right to contest them by replication and proof;" citing *Barry* v. *Abbot,* 100 Mass. 396; There the demurrer was treated as an application to the court to set down the case on bill and answer, and upon appeal the decree was considered as if it had been entered upon that theory. But if such be the proper practice we need not regard it in the case at bar, for in our opinion the exceptions constitute such a challenge to the sufficiency of the answer as to justify certifying the questions, under section 1 of

chapter 135 of the Code.   Besides, the answers are probably
sufficiently responsive to put in issue the authority either by
by-law or by holding out of the president and acting directors
and stockholders to enter into the contract and to make and
acknowledge the deed delivered in escrow; and we think the
court below was right in overruling the exceptions and that its
order should be affirmed.   In *Ward* v. *Ward's Heirs, supra,*
Judge BRANNON says that a general objection will prove inade-
quate when the answer contains good and bad matter distinct.
The points of law which the court below regarded as pre-
sented by the general exceptions will be more properly present-
ed on the merits, when the parties have made up all the issues
and taken any proof desired thereon.   Under our statute all
allegations of the bill not denied and all matters alleged in the
answer, if any, constituting grounds for affirmative relief not
controverted by reply, are by virtue of the statute taken to
be true for the purposes of the decree.

On the other branch of the case the question is:   Did
the court err in appointing a special receiver?   We are of
opinion that it did not and that the order of appointment
should be affirmed.   In the first place, the contract and deed
are alleged to have been, and purport on their face to have
been executed, and the deed to have been acknowledged by and
on behalf of the corporation, by the president and other officers
by its authority duly given.   The acknowledgment of the presi-
dent to the deed, sworn to as the law requires, so attests.   The
verifications to the answers filed were made by the same officer
who executed and swore to the acknowledgment to the deed.
The authority of these officers to cancel the contract and deed
is supported by no better evidence than their original authority
to make and execute the same.   It is alleged in these answers
that the executive officers acted in good faith and as they
thought for the best interest of the corporation, and with the
belief and faith that their action would be ratified by corporate
action.   Yea more, notwithstanding the general denial of auth-
ority and with knowledge of the only authority which these
officers had, it is alleged that respondent in good faith did all
that was required by the terms of the contract with the pur-

pose of fully performing the contract, by executing the deed and tendering it and subsequently delivering it into escrow as alleged. Moreover, as further evidencing a course of dealing and holding out of these officers as having plenary authority, the answers allege that on the very day on which it is admitted plaintiffs were entitled by the agreement putting the deed in escrow, to make the cash payment and deliver their note for the deferred payment and take up the deed, but after notice to the bank not to deliver it, these same officers and directors without previous corporate authority began negotiations with the Columbia Carbon Company to sell the property to it for a larger price, and that at the so-called informal meeting of stockholders representing 95,612 shares they acually considered the proposal of the Columbia Carbon Company and undertook to sell the property to that company for a larger price, subject, it is alleged, to approval and ratification by stockholders and directors at a regular or formal meeting.

We obesrve also by the admissions of the answers that on July 30, 1918, the last day, according to the contention of the defendant company, giving plaintiffs to comply with the contract by making the cash payment and execution and delivery of their note, counsel was employed for the company to notify them of their alleged default, and in a letter addressed to them, signed Montgomery Gas Company by L. Burke O'Neil, Attorney, there is not the slightest suggestion of want of authority of the officers to make the contract or deed, but on the contrary a recognition of their authority, representation of a compliance with a contract on the part of the company and failure on plaintiffs' part to comply therewith, wherefore, and for no other reason, plaintiffs were notified that said contract had been canceled and rescinded, and the deed left in escrow with the bank recalled. Mr. O'Neal is counsel for defendants in this suit. If this notice was given with corporate authority, it amounted to a recognition of the authority of the agents to make the contract and deed, not denial thereof. O'Neal's authority is not denied by the answers. The first denial of authority to make the contract and deed, so far as the record shows, appeared in the answers to the bills in this cause.

The claim that plaintiffs had forfeited their right to specific performance of the contract because of their alleged failure to comply therewith finds little justification in the record as now presented. Regardless of the claim that the contract provided that the first payment and execution of the note should be made on the signing and delivery of the deed, reasonable time to examine the title and make provision for payment was contemplated. That this was the understanding is evidenced by the acts and conduct of the parties in putting the deed in escrow and giving them until July 30th to comply. In the meantime an abstract of title was called for and not furnished, requiring the employment of counsel by plaintiffs to examine the records, resulting in the discovery of a mortagage on the property securing a large amount of bonds of the gas company, and necessity for its removal. We do not think that time was made the essence of the contract. The contract did not so provide. The contract, if valid, called for a good merchantable title, and the purchasers were entitled to call for a deed clear of incumbrances. The officers of the company were informed that the title was being examined by counsel, and in the forenoon of July 30th plaintiff made the deposit and delivered the note and demanded the deed from the depositary where it was still on deposit, which because of the notice of the defendant was denied them. On the record as now presented, we think performance within a reasonable time on the part of each of the parties was all that was required, and if the contract strictly construed required more, compliance within a shorter time was waived by the parties.

To secure a reversal of the decree appointing a special receiver counsel for defendants appeal to the general rule recognized in *Kanawha Coal Company* v. *Ballard & Welch Coal Company,* 43 W. Va. 721, 732; *Wilson* v. *Maddox,* 46 W. Va. 641; *Freer* v. *Davis,* 52 W. Va. 35, 36; and *Sult* v. *Hochsetter Oil Company,* 63 W. Va. 317, 334, 335; that to justify such appointment plaintiff must show, either that he has a clear right to the property itself, to charge it with a lien, or that it constitutes

a special fund to which he has the right to resort for the satisfaction of his claim; and, secondly, that the possession of the property was obtained by fraud, or that the property itself or the income arising from it is in danger of loss from the negligent waste, misconduct or insolvency of the defendant.

In the case as presented, we are of opinion that the plaintiffs have made out a clear *prima facie* case of right to the property. True, the defendants, represented by the same officers who executed the contract and deed, deny their authority in the premises, but no stockholder or other representative has done so by answer in the cause; but a number of our decisions say that a corporation may be bound by its agents in the same way that an individual may be bound, and that where a contract or deed regular on its face, under the seal of the corporation is signed and acknowledged by its chief officers and delivered to the grantee, authority on the part of the officers to make the instrument will be presumed, and that the burden is upon the corporation to show want of authority. *Fidelity Co.* v. *Railroad Co.,* 32 W. Va. 224, 256-7; *Ruffner Bros.* v. *Welton Coal & Salt Co.,* 36 W. Va. 244; *Boyce* v. *Montauk Gas Co.,* 37 W. Va. 73; *Deepwater Council* v. *Renick,* 59 W. Va. 343, 346; *Hartley* v. *Ault Woodenware Company,* 82 W. Va. 780, 97 S. E. 137. Prima facie we must say plaintiffs have made out a clear case of right to the property, and besides the prima facie of the contract and deed, the admissions and prior and subsequent conduct of the agents and stockholders strongly tend to confirm the fact of general plenary power on the part of the officers executing the contract and deed involved here.

Standing then on these prima facie rights, with nothing shown to overcome them, is there not also evidence of fraud and conspiracy on the part of the same officers, directors and stockholders and the Columbia Carbon Company to deprive plaintiffs of their lawful rights? It is admitted in the answers that almost immediately after, if not before, attempting to cancel the contract with plaintiffs and recall their deed, the same officers entered into the contract of sale and purchase

to the Columbia Carbon Company, and after this suit was brought agreed that the gas company would defend the suit, and if successful, convey the property to the carbon company; and before the rights of plaintiffs were determined, the carbon company was put in possession of the property with authority to drill and to sell and dispose of the oil. If plaintiffs are entitled to the property, this was a fraud upon them. The carbon company, it appears, owns the property on the adjoining lots, on which it has wells and is producing great quantities of oil. The gas company will have no interest in the oil if it succeeds in defeating plaintiffs in this case. The carbon company has everything to gain and nothing to lose by doing what the bill alleges it is doing, namely, working the wells in which it has absolute right to the detriment of the well on the property in controversy. And it has given no bond for faithful administration, and plaintiffs are left without assurance of, or means of proving disinterested operation on the lot they claim. In cases like this courts are vested with large discretionary powers in the appointment or refusal to appoint special receivers; and as we find no abuse of that discretion in the case at bar, we are not called upon to review or reverse its action. *Smith* v. *Brown,* 44 W. Va. 342; Alderson on Receivers, 108, §84.

As a result of the foregoing considerations, we are of opinion to also affirm the decree below appointing the special receiver, and to remand the cause for further proceedings.

*Affirmed*